**STATE OF FLORIDA**, ex rel. **W. O. FRAZIER**, v. **D. C. COLEMAN**, as Sheriff of Dade County, Florida.

23 So. (2nd) 477
October 5, 1945

June Term, 1945
En Banc

*Joseph A. Padway, Herbert S. Thatcher, J. F. Gordon* and *L. G. Egart,* for appellant.

*J. Tom Watson,* Attorney General, *R. W. Ervin, Jr.,* and *Howard S. Bailey,* Assistant Attorneys General, for appellee.

SEBRING, J.:

This is an appeal from an order of the circuit court remanding the appellant, Frazier, to custody to await trial upon a criminal information which, as he contends, does not charge an offense against the laws of the state. The appellant is the president of a Miami local union of bus drivers. The 98 other defendants named in the information, none of whom are parties to this proceedings, are either officers of the local union or members employed by the Miami Transit Company or the Miami Beach Railway Company as bus drivers.

As appears by the record, one C. L. Jaggears, a bus driver and member of said union, was duly convicted of an assault and battery in the municipal court of Miami, and was sentenced to fifteen days in the city jail. Upon learning of the conviction and incarceration of Jaggears, some of his fellow bus drivers who were also members of his union drove the busses they were operating from their regular routes of travel on the streets of Miami to the Dade County court house where the municipal judge's offices were located. There they parked their busses in such manner as to blockade one of the principal business streets of the city and, led by Frazier, stormed the judge's offices demanding the release of Jaggears. The busses were allowed to remain unattended in the streets for a period of two or three hours, until by use of threats and other forms of intimidation directed against the municipal judge the bus drivers procured the release of Jaggears. Then and only then did Frazier and his gang leave the court house and resume their regular duties.

As a result of this incident the county solicitor of Dade County filed certain criminal informations against Frazier and 98 employees of the bus companies who are charged with having participated in the demonstration at the Dade County court house. The charge in the information involved in this appeal is that the appellant and the other 98 named defendants unlawfully agreed, conspired, combined and confederated between themselves to, and did actually participate in "a strike, walkout and cessation of work and continuation thereof without the same being authorized by a majority vote of the employees to be governed thereby," contrary to the provisions of

chapter 21968, Laws of Florida, 1943. Interlarded in the verbiage of the charge are the facts above stated.

Frazier was arrested and taken into custody upon the criminal information. He thereupon filed a petition for writ of habeas corpus to test the legality of his detention under the particular information which is the subject of this appeal. Grounds of the petition were that the information failed to charge a violation of the Florida statute upon which it was predicated; and that such statute was void and unconstitutional. The sheriff filed his return and a hearing was had on the issues made. At the conclusion of the hearing the Circuit Court of Dade County adjudged the information to be legally sufficient, the statute upon which the information was based to be constitutional, and that the petitioner should be remanded to await trial. The petitioner has taken an appeal from the order of remand.

Chapter 21968, Laws of Florida, 1943, purports to be an act to regulate the activities and affairs of labor unions, their officers, agents, organizers and other representatives. Section 9 of the act prohibits members of a labor union from participating in any "strike, walkout or cessation of work or continuation thereof without the same being authorized by a majority vote of the employees to be governed thereby." The word "strike" is not defined in the statute; consequently in the absence of a legislative definition at variance it must be presumed that the legislature intended to use the term in its plain and ordinary signification. Smith v. State, 80 Fla. 315, 85 So. 911; State v. Tunnicliffe, 98 Fla. 731, 124 So. 279. The commonly understood meaning of the term is: "Act of quitting work; specif., such an act done by mutual understanding by a body of workmen as a means of enforcing compliance with demands made on their employer; a stopping of work by workmen in order to obtain or resist a change in conditions of employment." See Webster's International Dictionary (2nd) Ed.; "Economics and Problems of Labor" by Taft, p. 511; Bouvier's Law Dictionary; 31 Am. Jur. p. 928, Sec. 191 et seq; 12 C.J. p. 569, Sec. 54; 15 C.J.S. p. 1008, Sec. 11(a) and cases cited. As is indicated by the definition, the term ordinarily connotes a movement growing out of prob-

lems arising between the employee and the employer class, relating to hours, wages or employment conditions, in the course of which there is a concerted suspension of employment by the employees for the purpose of enforcing certain demands against the employer, or employers. As Teller points out in his work entitled "Labor Disputes and Collective Bargaining," the outstanding characteristics of the strike, as that term is employed in modern times, are (1) An established employer-employee relationship between the strikers and the person or persons against whom the strike is called; (2) the existence of a dispute between the parties and the resort by labor to the weapon of concerted refusal to work as a means or method of persuasion or coercion to accomplish the employees' demands; and (3) the contention on the part of the employees that although work has ceased the employer-employee relationship continues, albeit in a state of belligerent suspension. Teller, Labor Disputes and Collective Bargaining, Vol. 1, Sec. 78, p. 236.

It takes no more than a cursory examination of the information under attack to ascertain that the facts alleged do not present a case that may be prosecuted under the statute involved, for the elements essential to a strike are not present. There was no employer-employee relationship between the disputants. There was no existing controversy between the bus drivers and their employers as to hours, wages, or conditions of labor. The enterprise was not conceived for the purpose of forcing the employers, individually or as a class, into compliance with any demands made by such employees. The venture was not set in motion to punish employers or to better the working conditions of employees generally. The actions of the appellant and his misguided companions in storming the municipal judge's chambers for the purpose of procuring the release of Jaggears—though thoroughly reprehensible and subject to censure—did not, therefore, constitute a strike but was a contumacious and lawless act directed against the municipal court of Miami and its authority in defiance of law and order, with none of the characteristics of a labor betterment movement.

One object of the writ of habeas corpus is to determine

the sufficiency of an attempted charge laid and whether or not the petitioner should be held to answer the charge or some other charge reflected by the language employed in the complaint. Jones v. Cook, 146 Fla. 253, 200 So. 856. Where to the charge perferred no criminality is attached by law, the party imprisoned is entitled to discharge, Langston v. Lundsford, 122 Fla. 813, 165 So. 898, unless the charge, insufficient though it may be, is nevertheless sufficient to indicate that probable cause may exist to believe that the petitioner has committed some crime known to our law. Hepburn v. Chapman, 109 Fla. 133, 149 So. 196; Crosby v. Chapman, 114 Fla. 19, 153 So. 149; Lehman v. Sawyer, 106 Fla. 396, 143 So. 310. In such latter event, the petitioner, though entitled to be discharged from the criminal warrant upon which he is being held may be remanded conditionally for the lodgment of a proper criminal charge against him. Kirk v. Morrison, 108 Fla. 144, 146 So. 215; Jones v. Cook, supra.

The facts set forth in the information undoubtedly show that probable cause may exist to believe that the appellant, Frazier, was guilty of the violation of at least two of the criminal laws of the state; namely: obstructing a public highway, Sec. 861.01, Florida Statutes 1941, and conspiring to commit an act for the prevention or obstruction of justice. Sec. 833.01, Florida Statutes, 1941. But the facts charged do not establish or tend to establish that appellant was guilty of the crime of conspiring to commit, or of participating in, a strike in violation of the statute involved in the case at bar. It follows, therefore, that appellant should have relief from the criminal information which is the basis of this appeal, for there is no lawful warrant for holding him upon the charge attempted. If an accused is to be held for trial, it should be upon a criminal complaint charging the crime which the facts show, or at least tend to show, he may have committed, so that he may know the nature and cause of the accusation against him. Any other course will lead inevitably to a denial of the guaranties which the constitution affords every citizen.

For the reasons stated, the appellant, Frazier, should be conditionally discharged from custody under the criminal information upon which he is now held, but committed to the

custody of the sheriff of Dade County, for the institution of further proceedings against him in accordance with law; in default of which he should be discharged from custody absolutely. See Kirk v. Morrison, supra; Jones v. Cook, supra. By such course of procedure the constitutional rights of the petitioner will be preserved while at the same time the rights of society will be protected by the opportunity for prosecution of the appellant for such criminal offenses as may have been' committed by him growing out of the shameful incident upon which the present information is bottomed.

By reason of the conclusions reached it becomes unnecessary to pass upon the constitutionality of the challenged statute; it being well settled that the court will not pass upon the constitutionality of a statute, even when directly challenged on constitutional grounds, if the cause in which the challenge arises can be fully determined on other meritorious grounds. State v. Parker, 57 Fla. 170, 49 So. 124; Lipman v. State, 72 Fla. 428, 73 So. 357; State v. Johnson, 102 Fla. 19, 135 So. 816; Crumbley v. City of Jacksonville, 102 Fla. 408, 135 So. 885; Florida Growers v. City of Stuart, 105 Fla. 538, 141 So. 735; State ex rel. Crim v. Juvenal, 118 Fla. 487, 159 So. 663.

The judgment of remand is affirmed but with directions that unless an appropriate criminal charge is lodged against the appellant within 15 days of the going down of the mandate; the appellant be absolutely discharged from custody.

It is so ordered.

BUFORD, THOMAS and ADAMS, JJ., concur.

CHAPMAN, C. J., TERRELL and BROWN, JJ., dissent.


BROWN, J., dissenting:

Under the facts alleged in the information in this case, Sec. 9 (3) of Chapter 21968 is inapplicable, and it is unnecessary, and would indeed be inappropriate, for this court to express any opinion as to the constitutional validity of said statute.

However, the facts as alleged and set forth in the first count of the information show that appellant Frazier violated at least two of our perfectly valid criminal laws, to-wit: ob-

struction of a public highway (Sec. 861.01) and, second, conspiring for the obstruction or prevention of justice (833.01).

The information also shows the commission of a common law crime. It was a criminal offense at common law for any person to obstruct the due course of proceedings in the administration of justice, either alone or in concert with others, and the common law is in full force and effect in Florida except in so far as it has been changed or displaced by statute. See 8 R.C.L. 319 and 39 Am. Jur., pages 502 et seq. The facts alleged in the information clearly show a violation of this law, or, at the least, an outrageous attempt to violate it, by effort to browbeat and intimidate the municipal judge, which attempt is also unlawful.

While the constitution grants to all persons accused of crime the right to demand "the nature and cause of the accusation against him," it does not guarantee the accused the right, on habeas corpus proceedings, to be discharged from custody unless the indictment or information, or affidavit and warrant, under which he is held, wholly fails to charge any criminal offense.

Habeas corpus is one of the grandest and most ancient of our constitutional writs, designed to protect the liberty of those who are unlawfully detained. It is imbedded in our constitution and cannot be impaired or altered by mere legislative action. But habeas corpus is not a remedy for the discharge from custody of a prisoner held under a warrant or information or indictment that merely charges a criminal offense defectively or inartificially, but which does not wholly fail to charge a criminal offense. As was said by Mr. Justice WHITFIELD in the case of Reffkin v. Boyce, 104 Fla. 211, 139 So. 578: "The indictment does not wholly fail to charge an offense under the law, and habeas corpus is not available." (Citing a number of Florida decisions.) All the foregoing statements as to the scope of the remedy under the writ of habeas corpus, in so far as the statement of the charge against the defendant is concerned, are sustained by a long and unbroken line of the decisions of this court, going as far back as Ex parte Prince, 27 Fla. 196, 6 So. 659, and coming down to and including a number of our comparatively recent cases.

The first count of the information in this case, among other things, expressly charged that the defendants "did an unlawful act, to-wit: Obstructed the public streets, roads and established highways around, about and near the Dade County Court House and one of the City of Miami Fire Stations, commonly known as the Central Fire Station, located across Flagler Street from the Dade County Court House, by parking of said busses as aforesaid; thereby, and thus tying up, disrupting and crippling the public transportation system of the Greater Miami Area, obstructing the principal public streets, roads and established highways of the City," etc.

So, the information undoubtedly charged at least one criminal offense with sufficient clarity to justify the Circuit Court in denying the discharge of the petitioner from custody. And I think this is true also as to the offense of obstructing the administration of justice.

Therefore, as I see it, the judgment of the Circuit Court, remanding the petitioner, appellant here, to custody, should be affirmed, and the cause remanded for further appropriate proceedings, consistent with the foregoing opinion.

CHAPMAN, C. J., and TERRELL, J., concur.